STATE of Wisconsin, Plaintiff-Respondent,

v.

Bradley E. HUFFORD, Defendant-Appellant.

Court of Appeals

*No. 93–3251–CR. Submitted on briefs June 10, 1994.—Decided July 20, 1994.*

(Also reported in 522 N.W.2d 26.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Larry Steen* of *Godfrey, Neshek, Worth & Leibsle, S.C.* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.  The issue is whether the trial court in a criminal matter has the authority to impose interest as part of a restitution award. We hold that the legislative history of the restitution statute indicates an intent to disallow interest; thus, we reverse the trial court's order requiring Bradley E. Hufford to pay restitution which includes interest.

Hufford was convicted of two counts of felony embezzlement and one count of misdemeanor bail jumping. As a condition of probation and a condition of the Division of Intensive Sanctions, the trial court ordered Hufford to pay the full amount of restitution requested by one of the victims—$1622.80, which includes interest at the annualized rate of ten percent on any unpaid monies.

Hufford filed a motion seeking postconviction relief. At the hearing, Hufford argued that the trial court possessed no statutory authority to order a defendant to pay interest. The trial court disagreed and denied Hufford's motion.

Hufford contends that because the word "interest" does not appear in § 973.20, STATS. (the restitution statute), the legislature did not intend to allow interest on restitution.[1] The State argues that § 973.20(5), permit-

---

[1] Section 973.20(1), STATS., provides that the trial court, when imposing sentence or ordering probation, "shall order the defendant to make full or partial restitution ... to any victim of the crime." Under subsection (5), the trial court may order the defendant to pay "all special damages, but not general damages, substantiated by evidence in the record, which could be recov-

ting special damages as restitution, authorizes the trial court to include interest as part of the restitution order.

Whether interest is included in the restitution statute is an issue of statutory interpretation. Statutory interpretation is a question of law which we review de novo. *State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). Our objective in interpreting § 973.20, STATS., is to discern the intent of the legislature. *See id.* The primary source of interpretation is the language of the statute itself, and we will look no further if the statute is unambiguous on its face. *See Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 804, 440 N.W.2d 329, 332 (1989). However, this court looks to legislative history and other extrinsic evidence if the statute is ambiguous. *See Boltz v. Boltz*, 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986). A statute is ambiguous if it is capable of being interpreted by reasonably well-informed persons in either of two or more senses. *Pulsfus*, 149 Wis. 2d at 804, 440 N.W.2d at 332.

We hold that § 973.20, STATS., is ambiguous on its face. The ambiguity is created by the statute's silence on the issue of interest. On the one hand, the silence could be interpreted to mean that no interest may be awarded. On the other hand, the statute speaks of an allowance for "all special damages . . . which could be recovered in a civil action against the defendant for his

ered in a civil action against the defendant for his or her conduct in the commission of the crime." Section 973.20(5)(a).

or her conduct in the commission of the crime."[2] Section 973.20(5)(a). Both pre- and postjudgment interest can be collected on money damages in a civil action. *See Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 772-73, 350 N.W.2d 127, 131 (1984).

Thus, to resolve the ambiguity, we look to the legislative history, which reveals as follows. The former restitution provision, § 973.09(8)(c), STATS., 1979-80, allowed a trial court to include interest of five percent in computing a victim's pecuniary loss.[3] The Laws of 1981, ch. 352, repealed this provision. We might, at first glance, construe this repeal as merely having done away with the five percent ceiling in favor of trial court discretion to set interest at the market rate. Further legislative history, however, shows an express intent to do away with interest altogether. This history comes in the form of the provision that "[a]ny person ordered to pay restitution prior to the effective date of this act may petition the court for modification of the restitution order to remove *any* interest requirement under section 973.09(8)(c), 1979 stats." Laws of 1981, ch. 352, § 10 (emphasis added). We conclude that this provision clearly shows a legislative intent in 1981 to remove both the interest requirement and trial court authority to impose interest.

In 1987, our legislature repealed the restitution provisions in § 973.09, STATS., 1985-86, and created the

---

[2] "Special damages" have been described as representing the victim's actual pecuniary losses. *State v. Stowers*, 177 Wis. 2d 798, 804, 503 N.W.2d 8, 10 (Ct. App. 1993).

[3] Section 973.09(8)(c), STATS., 1979-80, defined a victim's "pecuniary loss" to include "[i]nterest at the legal rate on the amount of pecuniary loss from the time of loss until payment is made." *See also* § 138.04, STATS., 1979-80 (establishing the "legal rate" of interest as five percent per year).

current restitution statute, § 973.20, STATS., incorporating some of the former § 973.09 provisions in the new statute. 1987 Wis. Act 398, §§ 42, 43. Section 973.20(2)[4] was patterned after the federal restitution statute, 18 U.S.C. § 3663(b)(1), and § 973.09(1r), 1985-86. [5] Judicial Council Note, 1987, § 973.20. Section 973.20(5)(a), providing for special damages, is based on the former § 973.09(8)(a).[6] Judicial Council Note, 1987,

---

[4] Section 973.20(2), STATS., 1991-92, provides:

(2) If the crime resulted in damage to or loss or destruction of property, the restitution order may require that the defendant:

(a) Return the property to the owner or owner's designee; or

(b) If return of the property under par. (a) is impossible, impractical or inadequate, pay the owner or owner's designee the reasonable repair or replacement cost or the greater of:

1. The value of the property on the date of its damage, loss or destruction; or

2. The value of the property on the date of sentencing, less the value of any part of the property returned, as of the date of its return. The value of retail merchandise shall be its retail value.

[5] Section 973.09(1r), STATS., 1985-86, provided: "If restitution is ordered for a merchant who has had merchandise stolen or has otherwise been wrongfully deprived of his or her merchandise, the merchant's pecuniary loss shall be the retail value of the merchandise."

[6] Section 973.09(8), STATS., 1985-86, provides:

(8) In this section, "pecuniary loss" means:

(a) All special damages, but not general damages, substantiated by evidence in the record, which a person could recover against the probationer in a civil action arising out of the facts or events constituting the probationer's criminal activities, including, without limitation because of enumeration, the money equivalent of loss resulting from property taken, destroyed, broken or otherwise harmed and out-of-pocket losses, such as medical expenses; and

(b) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense.

This version of the statute is identical to the 1981-82 version.

§ 973.20. The question is whether the legislature intended to put back in what it had expressly repealed six years before.[7]

The State argues that because our present statute is modeled after the federal statute and because the federal cases construing the federal statute allow interest, we should follow those federal cases. We agree that ordinarily where a state statute is modeled on a federal statute, federal law construing the language of the statute is persuasive and is afforded great weight. *See State v. Szarkowitz,* 157 Wis. 2d 740, 751-52, 460 N.W.2d 819, 823 (Ct. App. 1990).

The problem with using the federal cases to construe this case is that the present statute is the result of a "blending" of the old restitution statute and the federal statutes. Thus, to the extent that the old statute is engrafted upon the new statute, we must use the legislative intent of the old statute to construe the new law, unless otherwise indicated. To the extent that the federal statute was used, we can use the federal cases.

The State relies upon the "special damages" section of the new statute as evidence that interest should be allowed. *See* § 973.20(5), STATS. However, the federal courts did not arrive at their decisions allowing interest after construing the term "special damages." In fact, the federal statute does not even mention the term

---

[7] We note that our new state statute on restitution was promulgated based upon the work of the Wisconsin Judicial Council. The 1987 Judicial Council Note for § 973.20, STATS., does not address the issue of interest. Also, perusal of the minutes of the Judicial Council Restitution Committee meetings reveals that interest was never discussed. WISCONSIN JUDICIAL COUNCIL, RESTITUTION COMMITTEE, SUMMARY OF PROCEEDINGS (Oct. 18, 1985).

"special damages." The term "special damages," as used in subsection (5) of our present statute, is peculiarly a part of *our* statute; it is a holdover of the language used in the old restitution statute. Thus, while the State asks us to use federal cases to construe the special damages language of subsection (5) to allow interest, the federal courts have not used similar reasoning. We reject the use of federal cases to construe subsection (5) as permitting interest.

In interpreting the term "special damages," we must use the existing legislative history. This is because we cannot ignore the fact that the term was used in the old statute where the legislature decided that the pecuniary damages were not to include interest. We conclude that the legislative decree voiding interest when computing special damages carried over into the new statute when the same term—"special damages"—was used again, without any mention of interest.

Thus, we hold that § 973.20, STATS., does not allow interest in a restitution award.[8] We admit, however, that we are not happy with the result. Under the "use value theory of money," a "dollar received today is worth more than a dollar received sometime in the future." *Johnson,* 119 Wis. 2d at 774, 350 N.W.2d at 132. Thus, a "make whole" remedy for the loss of money should, in our view, include interest as well as the present value of money.

We are satisfied that the federal cases interpreted the federal restitution statute with exactly that

---

[8].Therefore, we do not reach Hufford's argument that any interest awarded should have been at the "legal interest rate" of five percent instead of the ten percent awarded in this case.

thought in mind.[9] They reasoned that restitution was designed to make the victim whole, and to be truly whole, a victim must be awarded interest. Were we writing on a clean slate, without the baggage of our legislative history, we would rule the same way. The federal courts were not so saddled.

As we read the minutes of the meetings of the Wisconsin Legislative Council's Special Committee on Community Correctional Programs, the reason why interest was written out of the restitution statute was because of the administrative difficulty in computing

---

[9] The federal statute also is silent on the provision of interest. In *United States v. Patty*, 992 F.2d 1045 (10th Cir. 1993), the tenth circuit held that silence in 18 U.S.C. § 3663 as to prejudgment interest does not compel the conclusion of " 'an unequivocal congressional purpose that the obligation shall not bear interest.' " *Patty*, 992 F.2d at 1049 (quoting *Rodgers v. United States*, 332 U.S. 371, 373 (1947) (construing penalty provisions under the Agricultural Adjustment Act)). In *Rodgers*, the United States Supreme Court held that a "consideration in determining whether [statutory] obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed." *Rodgers*, 332 U.S. at 373.

The Courts of Appeal have applied the *Rodgers* test and concluded that the statutory purpose is best served by inclusion of both pre- and postjudgment interest in a restitution award. *United States v. Kress*, 944 F.2d 155, 159 (3d Cir. 1991), *cert. denied*, 112 S. Ct. 1163 (1992); *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir. 1990). "Prejudgment interest reflects the victim's loss due to his [or her] inability to use the money for a productive purpose, and is therefore necessary to make the victim whole." *Patty*, 992 F.2d at 1050. Thus, the "[f]oregone interest is one aspect of the victim's actual loss." *United States v. Smith*, 944 F.2d 618, 626 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 1515 (1992).

the interest.[10] We can only complain that rejecting interest just because the Department of Corrections has to compute it demeans the right of the victim to full recompense.[11] While we are concerned that the victim will be short-changed, only the legislature can amend this statute. *See State ex rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 703, 207 N.W.2d 585, 588 (1973). We invite the legislature's consideration of the concerns expressed in this opinion.

We reverse the restitution order and remand for proceedings consistent with this opinion.

---

[10] The Legislative Council was involved in the drafting of the 1981 statute. The five percent interest provision was said to be an "administrative nightmare" because the interest had to be calculated on a day-to-day basis; the interest provision was both difficult and expensive to administer. WISCONSIN LEGISLATIVE COUNCIL, SPECIAL COMMITTEE ON COMMUNITY CORRECTIONAL PROGRAMS, SUMMARY OF PROCEEDINGS, at 8 (Jan. 22, 1981).

[11] We are confident that the interest adjudged by the trial court to in this case would not create an administrative "nightmare." This is because the method of computation consists of simply calculating a fixed amount of interest from the date of the theft to the date of sentencing—rather like prejudgment interest. We are convinced that the concern of the legislative council's special committee centered on computing "postjudgment" interest. By this process, every time a payment was made by the offender, the administrator would have to apply the payment first to interest due and any remaining funds to restitution principal. With several thousand cases involving restitution, the process would lack uniformity. The committee considered this to be an undue administrative burden. We believe, however, that improvements in personal computers along with the development of sophisticated spreadsheet software programs would substantially ease this burden.

*By the Court.*—Judgments and order reversed and cause remanded.