STATE of Wisconsin, Plaintiff-Respondent,

v.

Nils V. HOLMGREN, Defendant-Appellant.

Court of Appeals

*No. 98–3405–CR. Submitted on briefs May 24, 1999.—Decided July 13, 1999.*

(Also reported in 599 N.W.2d 876.)

358

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Appel* of Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *William C. Wolford,* assistant attorney general of Madison.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. Nils Holmgren appeals a judgment and an order requiring him to pay $36,701.41 in restitution to his employer, Shawano Municipal Utilities, after he pled no contest to the crime of felony theft by an employee, contrary to § 943.20(1)(b), STATS.[1] He contests several items of the circuit court's restitution

---

[1] Section 943.20, STATS., provides in part:

(1) ACTS. Whoever does any of the following may be penalized as provided in sub (3):

. . . .

(b) By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner.

order on grounds that the items are not for "crime[s] considered at sentencing" under § 973.20(1r), STATS., and are not for special damages which could be recovered in a civil action against him. *See* § 973.20(5)(a), STATS. For the reasons discussed below, we conclude that the circuit court erroneously exercised its discretion by ordering restitution for: (1) Holmgren's personal use of a company car; (2) his unearned vacation time and benefits; and (3) the cost of hiring a new general manager after Holmgren resigned. Because ordering restitution for an audit and the auditor's testimony at the restitution hearing reflect a proper exercise of discretion, we affirm those portions of the restitution order.

## I. BACKGROUND

The limited record before us reveals the following facts.[2] In 1989, the Shawano Municipal Utilities Commission (SMU) hired Holmgren as its general manager. Holmgren had no written employment contract, but was given an annual salary. As part of his employment, he was allowed to use a company vehicle for both business and personal use. Holmgren often

---

[2] Holmgren filed only a partial transcript of the restitution and sentencing hearing because he "believe[d] no other transcripts are necessary or need to be prepared to prosecute this appeal." The appellant is responsible for ensuring that the record is complete on appeal, and when the record is incomplete, we must assume that the missing material supports the sentencing court's ruling. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226, 232 (Ct. App. 1993); *see also Suburban State Bank v. Squires*, 145 Wis. 2d 445, 451, 427 N.W.2d 393, 395 (Ct. App. 1988) (when appeal brought on an incomplete record, we assume facts essential to sustain sentencing court's ruling are supported by the record).

worked more than forty hours per week in his salaried position, but never received overtime, and was not required to report his hours or keep time records. His position as general manager also required out-of-town travel, and as Holmgren states, he was a "person with human frailties [who] developed a personal relationship with an unmarried lady." In connection with that relationship, Holmgren admits using a corporate credit card to charge travel, meal and lodging expenses for himself and his companion when he was not on company business. Additionally, he does not dispute that he improperly charged personal long distance telephone calls, cellular calls, and postage to SMU.

SMU began investigating Holmgren when the office manager became suspicious of his extensive telephone charges. After admitting to charging non-business related expenses, Holmgren resigned as SMU's general manager. The State subsequently charged him with employee theft for charging items and expenses to SMU that were not employment related. Pursuant to a plea agreement, Holmgren pled no contest to the felony theft charge.

SMU hired an accounting firm to audit Holmgren's expenses for 1996 and 1997. The firm prepared a four-page report listing charges Holmgren wrongly charged to SMU, and a member of the accounting firm testified at the combined restitution and sentencing hearing. The sentencing court made no specific findings regarding the amount due for each item the State sought to recover. Instead, the court adopted the State's overall restitution figure of $52,511.96, and the breakdown reflected in the audit. The court sentenced Holmgren to five years' probation and set restitution at $52,511.96. Because Holmgren paid a total of $15,810.55 before

restitution was ordered, the balance due under the order totals $36,701.41.

Holmgren does not contest his obligation to pay restitution for his criminal conduct, but disputes five items included in the $36,701.41 restitution balance: (1) $3,885.15 in vacation time and benefits; (2) $2,726.01 in personal use of the SMU vehicle; (3) $17,425 audit bill; (4) $1,257.50 for SMU's auditor's testimony at the restitution hearing; and (5) $8,073.83 for SMU's advertising costs to hire Holmgren's replacement. Additional facts will be discussed as necessary in our discussion of these contested restitution items.

## II. ANALYSIS

To determine if the disputed portions of the restitution order are proper, we turn to § 973.20, STATS., which governs restitution in criminal cases. The circuit court must order restitution for a crime considered at sentencing "unless the court finds substantial reason not to do so and states the reason on the record." Section 973.20(1r), STATS. This mandate notwithstanding, the legislature has limited the restitution a court may order. Section 973.20(5)(a), STATS., provides:

> **(5)** In any case, the restitution order may require that the defendant do one or more of the following:
> (a) Pay *all special damages, but not general damages, substantiated by evidence in the record,* which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing. (Emphasis added.)

Under § 973.20(5)(a), STATS., a court is prohibited from ordering restitution for the victim's general damages, *see State v. Stowers*, 177 Wis. 2d 798, 804–05, 503

N.W.2d 8, 10–11 (Ct. App. 1993); instead, a court may require a defendant to pay only special damages the victim sustains which evidence in the record substantiates. *See* § 973.20(5)(a), STATS.

Because the statute differentiates between special and general damages, we pause to define those terms. "[G]eneral damages are those that necessarily result from the injury regardless of its special character, the conditions under which the injury occurred, or the plaintiff's circumstances." 1 THE LAW OF DAMAGES IN WISCONSIN § 1.6 at 1–4 (Russell M. Ware, ed., 2d ed. 1994–95 (Oct. 1994)). "Special damages are those that *may* be present as the result of a wrongful act, depending on the factual circumstances, and that may be granted along with an award of general damages." *Id.* at 1–5. Whether damages are general or special often "depend[s] on the interest that is being protected by the rule of law forming the basis for the claim." *Id.*

General damages under the criminal restitution statute are those that "compensate the victim for damages such as pain and suffering, anguish or humiliation," damages crime victims often experience. *State v. Behnke,* 203 Wis. 2d 43, 60–61, 553 N.W.2d 265, 273 (Ct. App. 1996). In contrast, special damages as used in the criminal restitution context encompass "harm of a more material or pecuniary nature" and represent the victim's actual pecuniary losses. *See Stowers,* 177 Wis. 2d at 804, 503 N.W.2d at 10; *see also State v. Hufford,* 186 Wis. 2d 461, 465 n.2, 522 N.W.2d 26, 27 n.2 (Ct. App. 1994). Any readily ascertainable pecuniary expenditure paid out because of the crime is appropriate as special damages. *See Stowers,* 177 Wis. 2d at 804, 503 N.W.2d at 10; *see also Hufford,* 186 Wis. 2d at 465 n.2, 522 N.W.2d at 27 n.2.

Whether the circuit court had authority to order restitution in the first instance under a particular set of facts is a question of law. *See State v. Walters*, 224 Wis. 2d 897, 901, 591 N.W.2d 874, 875–76 (Ct. App. 1999). Here, the parties do not dispute whether the sentencing court had authority to order restitution in the first instance; therefore, we review the restitution order's terms for erroneous exercise of discretion. *See Behnke*, 203 Wis. 2d at 58, 553 N.W.2d at 272; *State v. Boffer*, 158 Wis. 2d 655, 658, 462 N.W.2d 906, 907–08 (Ct. App. 1990).

Underlying discretionary determinations may be findings of fact and conclusions of law. *See Michael A.P. v. Solsrud*, 178 Wis. 2d 137, 153, 502 N.W.2d 918, 925 (Ct. App. 1993). We will not overturn findings of fact unless they are clearly erroneous. Section 805.17(2), STATS. Because Holmgren has furnished only a partial transcript as part of the record, we will assume facts essential to sustain the sentencing court's ruling. *See Suburban State Bank v. Squires*, 145 Wis. 2d 445, 451, 427 N.W.2d 393, 395 (Ct. App. 1988). We review questions of law de novo. *See Michael A.P.*, 178 Wis. 2d at 148, 502 N.W.2d at 923.

The purpose behind restitution guides our review of the circuit court's restitution order. In reviewing a restitution order, we are mindful that the purpose of restitution is to return the victims to the position they were in before the defendant injured them, *see State v. Dugan*, 193 Wis. 2d 610, 621, 534 N.W.2d 897, 901 (Ct. App. 1995), and we construe the restitution statute broadly and liberally to allow victims to recover their losses resulting from the defendant's criminal conduct. *See State v. Anderson*, 215 Wis. 2d 673, 682, 573 N.W.2d 872, 875 (Ct. App. 1997); *see also State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9, 11 (Ct. App.

1994). Moreover, a restitution hearing is not the equivalent of a civil trial and does not require strict adherence to the rules of evidence and burden of proof. *See Stowers*, 177 Wis. 2d at 806, 503 N.W.2d at 11. With these general principles in mind, we examine the disputed items of the restitution order.

## 1. Salary and Benefits

Holmgren contends that he should not be required to reimburse SMU $3,885.15 for the value of unearned vacation time and benefits he received during personal trips when he wrongfully used SMU's credit card. He first argues that "being gone from work on a personal escapade" is not "a crime considered at sentencing" under § 943.20(1)(b), STATS., because it is not money, a negotiable security, an instrument, or another's paper or negotiable writing. The State responds with a "course of conduct" argument. It asserts that in pleading no contest to the theft, Holmgren admitted that he "used money he possessed because of his employment without" SMU's consent. Thus, the State reasons, if the expenses Holmgren charged to his employer were not authorized because they were not work related, then the time he spent on these "personal escapades" that he represented to be work related was also not authorized.

Second, Holmgren argues that under *Winkelman v. Beloit Mem'l Hosp.*, 168 Wis. 2d 12, 483 N.W.2d 211 (1992), the terminable-at-will doctrine allows either the employee or employer to terminate the relationship for cause, no cause, or even for cause that is morally wrong, without incurring liability to the other. Thus, he reasons that because his employment was terminable at will, and because he resigned, SMU acquired no right to sue him for recovery of employment benefits, citing *Winkelman*. The State maintains that Holmgren

misreads *Winkelman*, and that as subsequent case law explains, the terminable at will doctrine protects the employer from liability for the termination, but not the conduct committed before the termination. The State asserts that an employer does not lose the right to bring a legal action against an at-will employee simply because the employee resigns.

While we agree with Holmgren that the sentencing court improperly ordered restitution for his unearned vacation and benefits, we do not embrace his arguments. Rather, as we explain more fully below, we conclude that given an SMU office policy and Holmgren's salaried status, his unearned vacation time and benefits do not constitute special damages.

The framework for the parties' arguments is the circuit court's rationale for ordering restitution for unearned vacation/benefits and personal use of the company car. At the restitution hearing, the court stated:

> I can't believe that the employer would have said that it's okay to take our car down to Indiana to have an affair and lie about where you are at. That I can't imagine would have ever been condoned by the employee. I realize that there was kind of a loose arrangement on comp-time, but . . . . I don't think most of the other employees . . . weren't doing that sort of conduct on their comp-time. . . . [U]ltimately you have to consider that we're not talking about a private business here. We're talking about the taxpayers, [and] the commission . . . want to make sure that their money isn't spent foolishly. [A]s such, I don't see anything wrong with the restitution figures that have been submitted by the State.

The court's reasoning reflects an erroneous exercise of discretion because these benefits and vacation

are not "readily ascertainable pecuniary" expenditures paid out because of the crime; they are not special damages. *See Behnke*, 203 Wis. 2d at 60–61, 553 N.W.2d at 273. Holmgren was salaried and allowed to set his own hours. He was not required to report his hours or keep time records. It was undisputed that SMU had an office policy allowing salaried employees to take time off work to "make up" for extra hours on the job. For example, if Holmgren needed to work extra hours to complete a project, he could later take time off to compensate for the extra hours. This time off work was not charged against his vacation. As Holmgren explained at the hearing:

> [T]he job required you at times to put in a lot of extra overtime and that applied to everybody, and once in a while you could take some back. In fact, that was the agreement that was spelled out to me when I was first here.

Based on this office policy, and because Holmgren was salaried and had no set hours, SMU incurred no special damages for salary and benefits he received during personal trips on which he wrongfully used SMU's credit card. The improper use of the credit card does not somehow dissolve the policy and salary. Thus, SMU is not entitled to restitution for the vacation time and benefits.

## 2. Personal Use of Automobile

Next, Holmgren contests the court's order that he reimburse $2,726.01 for using the SMU vehicle while he was on personal trips and wrongfully used SMU's credit card. He makes three arguments regarding his personal use of the company car. First, he contends

that there is insufficient proof that he used the SMU vehicle on personal trips. Second, and alternatively to his first contention, he argues that even if sufficient proof exists, SMU suffered "no actionable injury" because he was allowed to use the vehicle for personal use without restriction. Put another way, he argues that using the company car during times when he charged unauthorized expenses against his employer is not a crime and creates no civil actionable injury to SMU and that the sentencing court's order thus retroactively changes his employment agreement with SMU. Third, he contends that because using the automobile is not a crime considered at sentencing under § 943.20(1)(b), Stats., SMU could not recover $2,726.01 as special damages in a civil action.

The State contends that Holmgren waived his right to object to the sufficiency of evidence, that his personal use of the SMU vehicle was all "one course of conduct," and that SMU did not lose its right to sue Holmgren because he resigned. We agree with Holmgren that his personal use of the automobile does not constitute a special damage.[3]

At no time during Holmgren's employment did SMU place any restrictions on Holmgren's personal use of the SMU vehicle. Rather, he was allowed exclusive and unrestricted personal use of the SMU vehicle. The commission was aware that Holmgren used the SMU vehicle for his personal business. Because SMU could not recover Holmgren's personal use of SMU's vehicle as special damages in a civil suit, the circuit

---

[3] Because we deem Holmgren's second argument dispositive, we need not address the parties' other contentions regarding his personal use of the company car. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

erroneously exercised its discretion by ordering restitution for that personal use.

## 3. Cost of Audit

Holmgren also contests the $17,425 audit bill, arguing that the charge for the audit is excessive and that the auditors spent substantial time investigating matters not related to the crime charged in the complaint, such as investigating petty cash when there was no alleged wrongdoing regarding petty cash. If he does not have to pay restitution for personal use of the company car or unearned vacation time and benefits, Holmgren maintains, he should not have to pay for an audit to investigate those claims. Citing *State v. Whitaker*, 797 P.2d 275 (N.M. App. 1990), the State argues that SMU's audit was a direct and reasonably foreseeable consequence of Holmgren's criminal acts because the audit was necessary to uncover the extent of his wrongdoing. We agree with the State, but without relying on *Whitaker*.

In ordering restitution for the audit bill, the sentencing court stated:

> I might also comment that I have also not heard any criticism of the auditors or their bill, except by counsel. I haven't had any auditors come and tell me that there was something wrong with the method that was carried out for the amount of the bill. . . . I'm sure these people did the work they say they did. . . . This audit didn't cost any more than the audits they've done before and this was a specific audit [that] carried a great significance because [it was a criminal charge] and you can't just let the utility employees come up with a restitution figure. The person who is going to get up on the stand and swear under oath that there was fraud . . . has to

look at every bill themselves. . . . [I]f there is some-.
thing wrong with the bill or with the audit, some
expert in the same area of the same field would
come in and tell me what's wrong.

First, the audit was done to ascertain the extent of
Holmgren's wrongdoing and to attach specific amounts
to the wrongdoing. Thus, the audit's cost was an expen-
diture necessitated by Holmgren's crime and is a
special damage that could be recovered in a civil pro-
ceeding. The audit was needed to determine the extent
of Holmgren's criminal activities and the restitution he
owed; the firm combed his personal calendars, credit
card invoices, phone records, mileage logs, and petty
cash records to determine if Holmgren received inap-
propriate payments for those items.

This rationale reflects an appropriate exercise of
discretion. Second, as the court's statement reflects,
the court noted that Holmgren failed to prove the audit
was unreasonable; he presented no expert witness to
counter SMU's auditor's testimony that the audit was
reasonable. We agree that there must be a reasonable
relationship between the defendant's criminal conduct
and the scope of the audit. Here, the auditors investi-
gated a series of issues they felt were reasonably
related to his criminal conduct. This is a sufficient
prima facie showing to authorize the imposition of
audit costs. The burden of demonstrating that portion
of the audit costs which were inappropriate rests upon
Holmgren who has failed to meet that burden. Accord-
ingly, the prima facie showing made by SMU was
sufficient for the court to authorize the ordered restitu-
tion for the audit costs.

## 4. Costs of Auditor's Testimony

Holmgren's next contention is that he should not be required to pay the auditor's $1,257.20 bill for testifying at the restitution hearing, and that under § 814.04(2), STATS., the auditor's expert fee is more than the statute allows. The State counters that Holmgren advised the State that auditors needed to appear at the restitution hearing to justify its $17,425 bill and that § 814.04(2) does not apply in criminal cases. *See* § 973.06(1)(c), STATS. Holmgren replies that because the sole reason for the auditor's appearance was to question the reasonableness of the bill, and not regarding the "audit work concerning the crimes charged," he should not have to pay the fee. In addition, he insists that because the auditor did not appear as an expert witness, § 814.04(2) applies, not § 973.06(1)(c).

The court rejected Holmgren's challenge to the expert fee:

> [S]o I can't find fault with the audit bill and it kind of begs the question when you say they didn't have to come to prove the audit, they had to come to prove the bill. Well, the criticism of the bill was that they didn't have to do all of the auditing that they did, so, they had to be there. They had to justify what they did and their time is worth a lot of money.

The court reasonably exercised its discretion by ordering restitution for the auditor's fees to testify at the restitution hearing. Holmgren specifically requested the auditor's attendance at the restitution hearing. A letter from Holmgren's counsel to the district attorney states: "However, we do require Virchow, Krause [the accounting firm] to be present to justify its bill of $17,425.00 if that sum is being claimed as resti-

tution. In summary, Virchow, Krause is not needed to prove the arithmetic of their findings. However, Virchow, Krause is needed to justify their $17,425.00 bill." It makes no difference why Holmgren requested the auditor's presence at the restitution hearing. For purposes of paying an expert witness fee, a different reason for attending the hearing is a distinction without a difference. No matter what the reason, the auditor was still required to attend the hearing. Thus, Holmgren's first argument fails.

Second, § 973.06(1)(c), STATS., expressly authorizes the State to recover the auditor's fees from Holmgren. *See State v. Schmaling*, 198 Wis. 2d 756, 763, 543 N.W.2d 555, 558 (Ct. App. 1995). The statute provides that "(1) . . . the costs taxable against the defendant shall consist of the following items and no others: . . . (c) Fees and disbursements allowed by the court to expert witnesses. Section 814.04(2) shall not apply in criminal cases." Section 973.06(1)(c), STATS. Further, Holmgren's argument that the auditor was not required to appear as an expert witness is without merit. The auditor, a certified public accountant, testified as to the reasonableness of the audit bill, and in giving his opinion on its reasonableness, he was acting as an expert witness. Thus, the court properly exercised its discretion by ordering restitution for the expert fee.

### 5. Costs of Hiring a New Manager

Holmgren next argues that the advertisement costs to hire a new general manager are not special damages which could be recovered in a civil action against him for his conduct in committing a crime considered at sentencing. *See* § 973.20(5)(a), STATS. He reasons that because he was an employee-at-will and

could resign without being liable to his employer, the advertisement costs are not special damages that SMU could recover in a civil action. The State argues that recruitment and hiring costs are special damages because they are the direct result of Holmgren's criminal conduct at SMU and his sudden resignation. *See Behnke*, 203 Wis. 2d at 60–61, 553 N.W.2d at 273. We agree with Holmgren.

■

Because SMU's recruiting and hiring costs are not pecuniary losses paid out because of the crime and are therefore not special damages, the sentencing court erroneously exercised its discretion by including such costs in the restitution order. These recruiting and hiring costs are unrelated to Holmgren's theft from SMU. SMU did not pay these costs because of the theft, but because Holmgren resigned. Unlike the new lock in *Behnke* that a sexual assault victim bought to protect herself from the defendant, who had previously assaulted her in her residence, the theft here did not cause the recruiting and hiring costs. This conclusion does not, as SMU contends, mean that Holmgren will be able to avoid paying restitution because he resigned before SMU could terminate his employment. Such costs would not be special damages even if SMU had terminated his employment.

## 6. The Indianapolis Trip

Last, Holmgren asks that we remand to the sentencing court with "direction[s] to consider whether . . . a . . . meeting in Indianapolis was legitimate" and should thus not be included in the restitution order. He claims that the restitution hearing "did not afford him an opportunity to show the legitimacy of that meeting." The State contends that Holmgren raised this issue at

the restitution hearing, but did not present evidence that he attended the meeting in question. Holmgren replies that, "technicalities aside," it is unfair because the district attorney has the documents to prove the meeting's legitimacy, and that despite his requests, the district attorney never disclosed them.

■

We reject Holmgren's argument. At the restitution hearing, Holmgren's counsel indicated that Holmgren was contesting paying restitution for the Indianapolis meeting and that he had "the records that will prove he was there." According to the limited record before us, Holmgren presented no such evidence. The court accepted the State's restitution figures, which included restitution for this meeting. Given Holmgren's failure to present evidence that he indeed attended, the court reasonably exercised its discretion by including it in the restitution order.

Further, the record fails to disclose that Holmgren objected at the hearing to the State's evidence that he did not attend that meeting. Because he failed to object on the basis of the State's failure to comply with discovery rules, that objection was waived. *See* § 901.03(1)(a), STATS.; *Turner v. State*, 76 Wis. 2d 1, 16, 250 N.W.2d 706, 714 (1977).

In conclusion, we reverse that part of the order requiring restitution for vacation time and benefits ($3,885.15), personal use of the SMU vehicle ($2,726.01), and SMU's advertising costs to hire Holmgren's replacement ($8,073.83). The remaining parts of the restitution order are affirmed.

*By the Court.*—Judgment and order affirmed in part and reversed in part.