STATE of Wisconsin, Plaintiff-Respondent,

v.

Tony G. LONGMIRE, Defendant-Appellant.

Court of Appeals

*No. 03–0300–CR. Submitted on briefs August 13, 2003.—*
*Decided April 1, 2004.*

2004 WI App 90

(Also reported in 681 N.W.2d 534.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. DEININGER, P.J. Tony Longmire appeals a judgment of conviction for theft by contractor. As part of its sentence, the court ordered him to pay $34,985 in

restitution, an amount which Longmire moved to reduce. He also appeals the court's order denying his postconviction motion. Longmire claims the amount of restitution ordered is excessive because he was denied an offset for contract work that was completed, and because it includes expenses not authorized by the restitution statute, WIS. STAT. § 973.20 (2001–02).[1]

¶ 2. We agree that the trial court improperly denied Longmire an offset for work performed that he had paid for. We therefore direct that an offset be allowed, but not in the amount Longmire seeks. We also conclude that the victims' attorney fees and their costs in correcting certain construction deficiencies are not, on the present facts, "special damages" recoverable in a civil action against Longmire "for his . . . conduct in the commission of a crime." WIS. STAT. § 973.20(5)(a). Accordingly, we reverse the restitution order in part.

¶ 3. Longmire also complains that the trial court sentenced him to an excessive period of extended supervision and failed to consider relevant "new factors" warranting a reduction in the length of extended supervision. We disagree that the matters Longmire cites constitute new factors for sentencing purposes and, although we affirm the sentence imposed in all other respects, we direct that Longmire may renew his sentence modification motion on remand based on the reduction in restitution we order in this decision.

## BACKGROUND

¶ 4. The owners of a home hired Longmire to complete a home improvement project for the sum of $45,295. The homeowners paid Longmire an initial

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

deposit of $30,000 before he commenced work. Longmire hired a subcontractor to excavate and pour concrete footings for which he paid the subcontractor $5,533, but no additional work was done on the project. Approximately one month after the agreed upon completion date had passed, the homeowners hired an attorney and advised Longmire through counsel that he was in breach of the construction contract. The homeowners subsequently canceled the contract, demanded the return of all payments they had made to Longmire, and asked him for a written accounting of how their payments had been applied. Longmire did not respond to these demands.

¶ 5. The La Crosse County District Attorney charged Longmire with one count of felony theft by contractor, WIS. STAT. §§ 779.02(5) and 943.20(1)(b),[2] and two counts of misdemeanor home improvement

---

[2] WISCONSIN STAT. § 779.02(5) provides, in relevant part:

> [A]ll moneys paid to any prime contractor . . . by any owner for improvements, constitutes a trust fund only in the hands of the prime contractor . . . to the amount of all claims due or to become due or owing from the prime contractor . . . for labor and materials used for the improvements, until all the claims have been paid . . . . The use of any such moneys by any prime contractor . . . for any other purpose until all claims . . . have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor . . . of moneys so misappropriated and is punishable under s. 943.20.

WISCONSIN STAT. § 943.20(1)(b), in turn, provides that whoever

> [b]y virtue of his or her office, business or employment . . . having possession or custody of money or . . . other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money . . . or writing without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner [is guilty of theft].

fraud.[3] Longmire pled guilty to theft by contractor and made an initial restitution payment of $1,000 in return for the dismissal of the two home improvement fraud charges, which were read in at sentencing. The trial court sentenced Longmire to fourteen months of confinement, to be followed by ten years of extended supervision, and it ordered him to pay the homeowners $34,985 in restitution.[4]

¶ 6. Longmire filed a postconviction motion challenging the amount of restitution. He argued that the restitution total should be offset by the amount he paid the subcontractor to perform the initial excavation and concrete work. He also contended that the total impermissibly included attorney fees and amounts for landscaping, cement removal, and modification of the concrete footings, allegedly expended by the homeowners to correct deficiencies in the excavation and concrete work.

¶ 7. The trial court declined to reduce restitution. It denied Longmire an offset for the excavation and concrete work, stating that contractor fraud was "a very

---

If the amount converted exceeds $2,500, the theft constitutes a felony. *See* § 943.20(3)(c).

[3] Wisconsin Stat. § 100.26(3) renders it a crime to intentionally refuse, neglect or fail to obey certain trade practice regulations. Longmire was charged with violating two such regulations: Wis. Admin. Code § ATCP 110.02(7)(c) for failing "to give the buyer timely notice of any impending delay in contract performance . . . beyond a deadline specified in the contract," and § ATCP 110.07(4)(a) for not returning "payments to which the buyer is entitled" within fifteen days after receiving a written demand for their return.

[4] It appears that this figure represents total restitution of $35,985, reduced by the $1,000 that Longmire paid prior to sentencing pursuant to his plea agreement.

unique situation" where "there's always shoddy workmanship" and that "if [Longmire] hadn't stole[n] the money, the job would have been completed, and then he'd have been responsible for correcting the mistake." The court also declined to eliminate any of the attorney fees or amounts expended to correct Longmire's subcontractor's allegedly shoddy work. The court concluded that "all of the attorney's fees were incurred in an effort to get the victims their money back," and that "if he hadn't stole[n] the money . . . we can assume [the work] would have been done properly, [and] that's an expense that [the homeowners] would not have incurred."

¶ 8. Longmire's postconviction motion also challenged the length of his extended supervision. He maintained that his ten-year period of extended supervision should be reduced because of two new factors: (1) the Criminal Penalties Study Committee Final Report on 1997 Wisconsin Act 283, Truth In Sentencing, which recommended that the maximum length of extended supervision for certain felonies be reduced; and (2) the legislature's subsequent capping of extended supervision for felony theft at five years. Finally, Longmire argued that the length of his extended supervision was unduly harsh and had not been supported by a proper explanation of the length of time chosen. As with the restitution, the trial court refused to modify Longmire's term of supervision. Noting that this was Longmire's third conviction for contractor fraud, the trial court expressed the intent that there not "be a fourth victim." The court concluded that the length of extended supervision was necessary to punish Longmire and to "make the victims whole."

¶ 9. Longmire appeals the judgment of conviction with respect to the amount of restitution and the length

of extended supervision ordered, as well as the denial of his postconviction motion seeking reductions in both.

## ANALYSIS

¶ 10. The trial court's restitution order required Longmire to reimburse the homeowners for the following items: (1) storage fees ($685); (2) landscaping, cement removal, and related construction costs ($3,100); (3) attorney fees ($2,200); and (4) repayment of the initial $30,000 deposit in full. Longmire challenges only the inclusion of the second and third items, as well as trial court's refusal to offset the restitution amount by the amount of money Longmire paid to a subcontractor for the initial excavation and concrete work. We first discuss the law governing restitution in criminal cases and then apply it to each of Longmire's challenges, beginning with his claim of entitlement to an offset.

### I.

¶ 11. To determine whether the disputed portions of the restitution order are proper, we must first consider Wis. Stat. § 973.20, which governs restitution in criminal cases. The trial court "shall" order restitution for a crime considered at sentencing "unless the court finds substantial reason not to do so and states the reason on the record." Section 973.20(1r). A primary purpose of restitution is to compensate the victim. *See* *State v. Sweat*, 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997). Section 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." *State v. Kennedy*, 190 Wis. 2d 252, 258, 528

N.W.2d 9 (Ct. App. 1994). Additionally, we are to "construe the restitution statute broadly and liberally in order to allow victims to recover their losses [that occur] *as a result of a defendant's criminal conduct."* *State v. Anderson*, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997) (emphasis added).

¶ 12. This mandate notwithstanding, the legislature has placed limits on the restitution a court may order. WISCONSIN STAT. 973.20(5) provides, in relevant part:

> (5) In any case, the restitution order may require that the defendant do one or more of the following:

> (a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.

Whether an item included within a restitution order comes within statutory limitations on what a court may order is a question of law that we decide de novo. *See State v. Rash*, 2003 WI App 32, ¶ 5, 260 Wis. 2d 369, 659 N.W.2d 189, *review denied,* 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (Wis. Apr. 22, 2003) (No. 02–0841–CR).

¶ 13. Restitution awarded under WIS. STAT. § 973.20(5)(a) is limited in two ways relevant to our present analysis. First, before a trial court may order restitution "there must be a showing that the defendant's *criminal activity* was a substantial factor in causing" pecuniary injury to the victim. *State v. Johnson*, 2002 WI App 166, ¶ 16, 256 Wis. 2d 871, 649 N.W.2d 284 (emphasis added). In making its determina-

tion, however, a trial court may "take[] a defendant's entire course of conduct into consideration" including " 'all facts and reasonable inferences concerning the defendant's activity *related to the 'crime' for which [he] was convicted,* not just those facts necessary to support the elements of the specific charge.' " *State v. Madlock,* 230 Wis. 2d 324, 333, 602 N.W.2d 104 (1999) (emphasis added) (citation omitted). Put another way, we have said that a causal link for restitution purposes is established when "the defendant's criminal act set into motion events that resulted in the damage or injury." *Rash,* 260 Wis. 2d 369, ¶ 7.

■■■■■

¶ 14. Second, restitution is limited to *"special damages* . . . which could be recovered in a civil action against the defendant for his . . . conduct in the commission of a crime." Wis. Stat. § 973.20(5)(a) (emphasis added). This limitation restrains a sentencing court from ordering the payment of "general damages," that is, amounts intended to generally compensate the victim for damages such as pain and suffering, anguish, or humiliation. *See State v. Behnke,* 203 Wis. 2d 43, 60, 553 N.W.2d 265 (Ct. App. 1996). The term "special damages" as used in the criminal restitution context, means "[a]ny readily ascertainable pecuniary expenditure paid out because of the crime." *State v. Holmgren,* 229 Wis. 2d 358, 365, 599 N.W. 2d 876 (Ct. App. 1999).

¶ 15. Thus, Wis. Stat. § 973.20(5)(a) limits the items of damages that a sentencing court may order a convicted defendant to pay as restitution in a criminal case to a victim's pecuniary losses attributable to the defendant's criminal conduct. As discussed below, however, a court may not order a criminal defendant to compensate a victim under § 973.20(5)(a) for any item that does not constitute "special damages," nor for any

losses that arise solely from the defendant's *non-criminal* conduct. We conclude that the restitution order under review oversteps these statutory limitations.

### A.

¶ 16. The determination of the *amount* of restitution to be ordered (and thus whether a victim's claim should be offset or reduced for any reason) is reviewed under the erroneous exercise of discretion standard. *See Johnson*, 256 Wis. 2d 871, ¶ 7. When we review a circuit courts exercise of discretion, we examine the record to determine whether the circuit court logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach. *Id.* Although the burden falls on a victim or the State to establish the amount of the pecuniary injury a victim has sustained on account of a crime,[5] Longmire bears the burden of proving whether an offset should be allowed and in what amount. *See State v. Walters*, 224 Wis. 2d 897, 907–08, 591 N.W.2d 874 (Ct. App. 1999).

---

[5] It is generally the State's responsibility to present at sentencing the "amount of loss suffered by any victim as a result of a crime considered at sentencing" for purposes of restitution. *See* Wis. Stat. § 973.20(13)(a)1, (b), and (c). However, the "burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim," and, at any post-sentencing hearing on the proper amount of restitution, the district attorney is not required to represent the victim unless the court so orders. Section 973.20(14)(a); *State v. Kayon*, 2002 WI App 178, ¶ 13, 256 Wis. 2d 577, 649 N.W.2d 334.

¶ 17. The State does not dispute that Longmire did not retain or misapply all of the $30,000 the homeowners paid him to make improvements to their home: he paid $5,533 to a subcontractor to excavate and pour concrete footings.[6] The trial court acknowledged this fact but nevertheless disallowed any offset for this expenditure by Longmire. The trial court explained its reasoning as follows:

> Everybody concedes that Mr. Longmire took $30,000 and stole it, or at least a good portion of it. His claim that he's entitled to a credit for some money that he paid to put in the wrong footings in the wrong place in the wrong size that had to be torn out, and I'm not going to reward him for that for a number of reasons, not the least of which was the fact that there were read-in offenses, and because of the particular nature of contractor fraud there's always shoddy workmanship, it goes hand in hand. And because if he hadn't stole[n] the money, the job would have been completed, and then he'd have been responsible for correcting the mistake, and it is now the homeowner who has to pay to correct that mistake. So I'm not going to give him credit for the amount that he claims he paid for the footings.

The State contends that the trial court's denial of an offset should be upheld because Longmire never established facts sufficient to show that the trial court abused its discretion in refusing to credit him with the monies paid to partially complete the job. It also sug-

---

[6] We note that the criminal complaint indicates that the homeowners received an estimate of the value of Longmire's initial excavation and concrete work that was less than the amount Longmire paid for it. Except for this statement in the complaint, the homeowners did not challenge the amount Longmire claimed he spent on the work.

gests that such a showing would involve proof that the homeowners had benefited from Longmire's expenditure.

¶ 18. We conclude that the trial court erroneously exercised its discretion by not allowing any offset whatsoever for Longmire's undisputed expenditure of a portion of the deposit money in compliance with his contractual obligations. We also conclude, however, that the extent of the homeowners' benefit from Longmire's expenditure may be considered in determining the amount of offset to be allowed.

¶ 19. There can be little question that the homeowners in this case could recover as special damages in a civil action that part of the $30,000 they paid to Longmire that he misapplied or converted to his own use. *See Topzant v. Koshe*, 242 Wis. 585, 588, 9 N.W.2d 136 (1943) (explaining that damages for conversion is the value of items wrongfully taken). Longmire did not convert the entire $30,000, however, because he expended $5,533 of it to commence work pursuant to his contract with the homeowners. We thus conclude that Longmire has met his burden to establish that the $30,000 figure should be reduced or offset for the excavation and concrete work Longmire procured for the homeowners.

¶ 20. Although two home improvement fraud charges were read in at sentencing, and thus also constituted crimes "considered at sentencing," neither negates Longmire's entitlement to an offset for expenditures he made on the contracted work. The conduct underlying the two misdemeanors was Longmire's failure to notify the homeowners of a delay in completion of the contract and his failure to return payments to which the homeowners were entitled after they de-

manded the return in writing. If the homeowners suffered pecuniary loss as a result of the unanticipated delay in completing the contracted work, those damages were unrelated to the issue of an offset to the deposit for work actually completed. Likewise, the damages attributable to Longmire's failure to return unexpended sums after the homeowners' written demand would seem to be the same as the theft or conversion damages—that is, the homeowners would not be entitled to recover any sums Longmire actually expended on the project.

¶ 21. Our conclusion that Longmire is entitled to an offset for amounts he expended for work done does not necessarily mean that he is entitled to an offset of $5,533. That amount may have been excessive or unreasonable for the work actually performed. The homeowners claimed, and the trial court found, that, despite Longmire's expenditure of $5,533 on excavation and concrete work, the work was poorly done and the homeowners were required to pay some $3,100 to correct it. Although, for reasons set forth in the next section of this opinion, we conclude that Longmire could not be ordered to pay for these additional expenses as a separate item of restitution, we see no barrier to considering the corrective expenses in determining the amount to be offset against the $30,000 deposit for work performed. We therefore conclude that the trial court's factual finding regarding the homeowner's additional expenses to correct the deficiencies in the excavation and concrete work, correctly applied, operates to reduce the allowable offset from $5,533 to $2,433, thereby crediting Longmire with the amount he expended on contract work less the amounts the homeowners expended to correct that work.

## B.

¶ 22. As we have explained, on the facts of this case, the $3,100 the court found the homeowners expended for correction of defects in the work performed by Longmire's subcontractor may properly be applied to reduce the offset claimed by Longmire for the excavation and concrete work he paid for. Not anticipating that we would treat the expenditures in that fashion, Longmire challenges the trial court's inclusion of the $3,100 as a separate item of restitution. We agree that, absent Longmire's claim for an offset for work performed, the amounts in question should not have been included in the restitution order. The parties have briefed the issue of the inclusion of these costs as a separate item of restitution and, even though the "bottom line" of our disposition is unaffected, we address the issue to provide guidance on it.

¶ 23. We conclude that these costs, incurred by the homeowners and admittedly arising out of their dealings with Longmire, are not recoverable as a separate item of restitution under WIS. STAT. § 973.20(5)(a). Even if the work-correction expenditures could have been recovered in a civil action against Longmire for breach of contract, they would not constitute "special damages . . . which could be recovered in a civil action against [him] for his . . . *conduct in the commission of a crime considered at sentencing.*" Section 973.20(5)(a) (emphasis added).

¶ 24. We have no quarrel with the State's contention that a criminal defendant can be required to pay restitution for "special damages," even if not directly caused by the criminal conduct, so long as some "causal

nexus" is established between the crimes considered at sentencing and the damage for which restitution is sought. *See, e.g., State v. Canady*, 2000 WI App 87, ¶ 9, 234 Wis. 2d 261, 610 N.W.2d 147. However, the $3,100 allowed in the restitution order for additional construction costs was not attributable to the fact that Longmire converted the lion's share of the $30,000 deposit he was given, or that he failed to return unexpended portions of the deposit after the same was demanded, or that he failed to notify the homeowners of a delay in completion of the contract. Rather, the "precipitating cause," *id.*, for these expenditures was construction work, shoddily performed, but legally procured by Longmire in furtherance of his contractual obligations.

¶ 25. The record provides no basis for the trial court's conclusions that "because of the particular nature of contractor fraud there's always shoddy workmanship" and that "if [Longmire] hadn't stole[n] the money . . . we can assume [the work] would have been done properly, [and] that's an expense that [the homeowners] would not have incurred." Although it may be the case that many who commit theft by contractor or violate trade regulations also perform shoddy work, the former are crimes but the latter is not.[7] Contrary to the trial court's statements, had Longmire not stolen the homeowners' money but instead applied all of it toward completing the contracted work, the homeowners might still have found it necessary to incur additional expenses in correcting the deficiencies. In that case, however, their only recourse would have been to pursue a civil recovery, and we cannot read WIS. STAT. § 973.20(5)(a) so broadly as to permit them to piggy-

---

[7] As the prosecutor noted at Longmire's sentencing, "it's not a crime to do bad work."

back a breach of contract claim onto the pecuniary losses they incurred on account of Longmire's theft.

■

¶ 26. We emphasize that it is not the nature of the potential civil cause of action that distinguishes between amounts awardable as restitution and those that are not. WISCONSIN STAT. § 973.20(5)(a) permits restitution for "all special damages" that could be recovered in any type of "civil action," be it one for conversion, breach of contract, or even (as we discuss further below) a statutory cause of action based on administrative rule violations. Longmire's conversion of the deposit payment, his failure to return unexpended portions of it after a written demand, and his failure to give notice of a delay in completion of the project no doubt all constituted breaches of Longmire's contract with the homeowners. But the crucial fact is that each of these acts was also "a crime considered at sentencing," and hence, any losses attributable, directly or indirectly, to those acts by Longmire were proper items of restitution. Section 973.20(5)(a). The poor quality of the work actually performed under the contract, however, was purely a civil wrong and the criminal restitution statute cannot be enlisted to remedy it.

### C.

¶ 27. Longmire's final challenge to the restitution order is to the inclusion of the homeowners' attorney fees in the amount of $2,200. At the postconviction hearing, one of the homeowners testified that they had commenced a civil suit against Longmire seeking recovery of damages for landscaping costs, removal of debris, and additional construction necessitated by the subcontractor's allegedly shoddy work. The homeown-

ers' attorney also testified. She stated that she was retained for the purposes of recouping the stolen funds. The attorney produced a billing invoice itemizing the services she rendered to the homeowners. In addition to charges for work relating to the civil action against Longmire, the attorney's billings included charges for her attendance at Longmire's plea hearing and for "drafting [a] new contract, because we proposed a new contract to Mr. Longmire in lieu of the one that he originally . . . agreed to but . . . hadn't completed."

¶ 28. The trial court permitted the inclusion of attorney fees in the restitution order on the following rationale:

> [W]hether there was advice given about the criminal case or advice given about the civil case, all of the attorney fees were incurred in an effort to get the victims their money back. That's what those attorney's fees were for. Whether it was . . . before or after the Criminal Complaint, or before the plea hearing or after the plea hearing, every bit of effort it is conceded expended by the attorney on behalf of the victims was to try and get the money that Mr. Longmire stole back. And that to me is a reasonable and necessary effort occasioned by his crime.

¶ 29. Longmire contends the trial court erred because the "American Rule" requires litigants in a civil action to bear their own litigation costs, and thus the rule precludes a recovery of attorney fees as "special damages" under WIS. STAT. § 973.20(5)(a). The State responds that WIS. STAT. § 100.20(5) provides an exception to the "American Rule" applicable to this case because it would allow the homeowners to recover "a reasonable attorney's fee" in a civil suit against Longmire for the Administrative Code violations that underlay the two read-in misdemeanors. Although we agree

that the homeowners might be able to recover certain attorney fees in such a suit, we also agree with Longmire that the fees should not have been a part of the restitution order for amounts authorized under § 973.20(5)(a).[8]

¶ 30. We note first that attorney fees and costs awarded to a successful plaintiff in an action under WIS. STAT. § 100.20(5) are not "damages" recovered but costs of litigation shifted to the defendant. The statute provides as follows:

> Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

Because the statutory language plainly distinguishes between a plaintiff's "pecuniary loss" constituting "damages," and attorney fees a plaintiff may also recover, we conclude that the legislature did not intend that costs and fees were subsumed within the plaintiff's "damages."

¶ 31. This interpretation is consistent with our discussion of WIS. STAT. § 100.20(5) in *Armour v.*

---

[8] We note that a restitution order may require that a defendant pay other costs, such as a victim's "out-of-pocket expenses" and lost income "resulting from the filing of charges or cooperating in the investigation and prosecution of the crime." WIS. STAT. § 973.20(5)(b). The State does not argue, however, that any provision other than § 973.20(5)(a) authorizes the restitution order in this case. Accordingly, we do not consider whether the homeowners' attorney fees, or some of them, might be ordered as restitution under some other subsection or paragraph of § 973.20.

*Klecker*, 169 Wis. 2d 692, 486 N.W.2d 563 (Ct. App. 1992), where we consistently refer to the statute as allowing a successful plaintiff to recover "double damages *and* attorney fees," *see id.* at 695, 698–701 (emphasis added), an implicit recognition that a successful plaintiff's "damages" do not include attorney fees. It is also consistent with our conclusion in *Paulik v. Coombs*, 120 Wis. 2d 431, 355 N.W.2d 357 (Ct. App. 1984), that a plaintiff who prevailed on a claim for double damages under § 100.20(5) could also recover reasonable attorney fees even though the defendant had obtained judgment on a counterclaim that exceeded the plaintiff's damages. *Id.* at 438.

¶ 32. Finally, we observe that, in authorizing a sentencing court to order a criminal defendant to pay restitution to a victim for "special damages . . . which *could be recovered* in a civil action against the defendant," Wis. Stat. § 973.20(5)(a) (emphasis added), the statute plainly contemplates that restitution ordered in a criminal case will generally render actual civil litigation unnecessary. We cannot conclude that the legislature intended to include in "special damages" attorney fees for pursuing arguably unnecessary litigation.[9]

---

[9] Our holding in *State v. Anderson*, 215 Wis. 2d 673, 573 N.W.2d 872 (Ct. App. 1997), which both parties cite and discuss, does not govern the present facts. We upheld in *Anderson* the inclusion in a restitution order of attorney fees where the incurred attorney fees are the natural and proximate result of a wrongful act by the defendant which subjects the plaintiff to litigation *with a party other than the defendant. Id.* at 681 (emphasis added). The fees at issue here were incurred in pursuing claims against Longmire, not a third party. Moreover, we note that the attorney fee at issue in *Anderson* was a contingency fee that reduced the victims' recovery from a third party who shared responsibility for their losses. If the amount

¶ 33. Therefore, because (1) Longmire is entitled to an offset for amounts he expended in performance of the contract; (2) the homeowners' expenses in correcting construction deficiencies may not be ordered as an item of restitution but may be used to reduce the offset; and (3) attorney fees recoverable under WIS. STAT. § 100.20(5) are not "special damages . . . which could be recovered in a civil action" within the meaning of WIS. STAT. § 973.20(5)(a);[10] we direct that, on remand, the amount of restitution ordered in the judgment of conviction be reduced from $34,985 to $27,252.[11]

recovered from the third party was allowed as an offset against the victims' pecuniary losses, the effect of allowing the fees as an item of restitution essentially reduced the offset to reflect the net value of the third-party recovery the victims actually received, just as we have reduced Longmire's offset to reflect the victims' net benefit from Longmire's construction expenditures.

[10] As we have noted, the record indicates that the attorney fees included in the restitution order covered a variety of legal services provided to the victims related to their dealings with Longmire. Longmire also argues that the attorney fees should be excluded from the restitution order because the record does not show that any of the fees were incurred in bringing an action under WIS. STAT. § 100.20(5) grounded on Longmire's Administrative Code violations, which constitutes the State's principal justification for their inclusion. Because we conclude that attorney fees, even if recoverable under § 100.20(5), are not "special damages" within the meaning of WIS. STAT. § 973.20(5)(a), we do not address the potential lack of evidentiary support.

[11] The revised restitution figure of $27,252 is derived as follows: $34,985 (present restitution amount) MINUS $2,433 (net offset for work Longmire paid for) MINUS $3,100 (disallowed construction repair costs) MINUS $2,200 (disallowed attorney fees) = $27,252. Alternatively, the amount can be calculated as follows: $30,000 (homeowners' deposit paid to Longmire) MINUS $2,433 (net value of contract work per-

¶ 34. We acknowledge that the reduction in restitution we direct will mean that the homeowners will not be "made whole" for all of their losses resulting from their unfortunate dealings with Longmire, unless they are successful in pursuing further civil remedies against him. As the supreme court has explained, however, "the criminal justice system should not be employed to supplement a civil suit or as a threat to coerce the payment of a civil liability or to perform the functions of a collection agency." *Huggett v. State*, 83 Wis. 2d 790, 803–04, 266 N.W.2d 403 (1978). Our disposition seeks to ensure that the criminal justice system requires Longmire to compensate his victims for the damages they sustained by virtue of Longmire's criminal conduct, no less and no more.

## II.

¶ 35. Longmire raises several challenges to the length of extended supervision the trial court imposed. First, he contends that the trial court improperly accorded overriding weight to the amount of time he would need to pay the ordered restitution, thereby slighting the three "primary" sentencing factors (gravity of the offense, nature of the offender, and need for public protection). Second, Longmire argues that the court's emphasis on the length of time necessary for him to pay the restitution award constituted discrimination on the basis of his financial status, thereby violating his constitutional right to equal protection. Finally, he asserts that "new factors" warrant a reduction in his sentence.

formed) = $27,567 (amount Longmire converted to his own use) PLUS $685 (uncontested "storage fees") MINUS $1,000 (paid prior to sentencing) = $27,252.

¶ 36. Except for the constitutional claim and the presence or not of a "new factor," matters we decide de novo, our review of Longmire's sentence challenges is limited to determining whether the sentencing court erroneously exercised its discretion. There is a strong public policy against interference with the sentencing discretion of the trial court, and an equally strong presumption that the sentencing court acted reasonably in exercising its discretion. *See State v. Perez*, 170 Wis. 2d 130, 142, 487 N.W.2d 630 (Ct. App. 1992). The primary factors a court must consider when fashioning a sentence are: "the gravity and nature of the offense, including the effect on the victim, the character of the offender, including his or her rehabilitative needs and the interests of deterrence, and the need to protect the public." *State v. Setagord*, 211 Wis. 2d 397, 416, 565 N.W.2d 506 (1997). Within this framework, however, the "weight which is to be attributed to each [primary sentencing] factor is a determination which appears to be particularly within the wide discretion of the sentencing judge." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).

¶ 37. Longmire acknowledges that restitution may play an important role in meeting an offender's rehabilitative needs. *See Huggett*, 83 Wis. 2d at 798 ("Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions."). Longmire objects, however, to what he perceives as the trial court's sole reliance on the amount of restitution in setting his term of extended supervision. He claims the

court simply failed to consider his other rehabilitative needs or either of the other primary sentencing factors. We disagree.

¶ 38. The court's considerations at sentencing were not as narrow as Longmire contends. Among other things, the court said this:

> There are three principles that are here today that are conflicting. The first one obviously is restitution to the victims, making them whole. The second one is protection of the community to make sure there's no more victims. And the third one is to punish for the wrongdoing that was done. I wish I could wrap all of those up in a nice clean package and make sure that all of those interests were protected. I'm not sure I can.

The court also indicated that it was taking into consideration that Longmire had prior convictions for contractor fraud, that the current offense occurred while Longmire was on probation for contractor fraud, and that it viewed Longmire as having a lack of sympathy for the victims in this case. At the postconviction hearing, the trial court further explained that the sentence it imposed was influenced primarily by two factors: the need to make the victims whole and Longmire's prior record.

■■■■■

¶ 39. We conclude that the trial court's sentencing rationale, taken as a whole, did not constitute an erroneous exercise of discretion. A court, after giving consideration to the relevant sentencing factors, may give disproportionate or controlling weight to a single factor. As the supreme court has explained:

> [I]mposition of a particular sentence can be based on any one or more of the three primary factors. While an element of weighing or balancing is involved, this is for

the trial court to perform. Such determination will not be reweighed or rebalanced by this court, since " . . . weight which is to be attributed to each factor is a determination which appears to be particularly within the wide discretion of the sentencing judge."

*Anderson v. State*, 76 Wis. 2d 361, 367, 251 N.W.2d 768 (1977) (quoting *Ocanas*, 70 Wis. 2d at 185).

¶ 40. We also reject Longmire's equal protection challenge. At the postconviction hearing, the court declined to reduce the ten-year term of extended supervision it had imposed, saying:

> Now, if he pays the whole restitution in five years, come on in and I'll cut the extended supervision at that point in time.[12] I'd love to see it happen. I don't think the victims would complain at all if they got the money back sooner rather than later. But . . . it's probably going to take him that long, and that's why I gave him the extended supervision that I did.

Longmire contends that the court's comments show that the lengthy term of supervision was imposed solely because of Longmire's straitened circumstances, thus violating the equal protection clause of the Fourteenth Amendment.

¶ 41. We disagree. The cases cited by Longmire, *Klimas v. State*, 75 Wis. 2d 244, 249 N.W.2d 285 (1977), and *State ex rel. Pedersen v. Blessinger*, 56 Wis. 2d 286, 201 N.W.2d 778 (1972), preclude a court, on equal protection grounds, from imposing imprisonment on a defendant solely because of his or her poverty. This does not mean, however, that a defendant may not legiti-

---

[12] See footnote 14.

mately be placed on a lengthy period of supervision because of his or her inability to immediately pay an obligation imposed as part of the disposition, provided that, if given time, the defendant would be able to make substantial payments toward the obligation. *See Huggett*, 83 Wis. 2d at 803 ("Failure to make restitution within the original probation period might constitute cause for extending probation and continuing restitution if there is a basis for believing that additional restitution would effectuate the objectives of probation and that [the defendant] could make more than negligible payments during the extended period."); *State v. Kuba*, 150 Wis. 2d 618, 620–22, 443 N.W.2d 17 (Ct. App. 1989) (concluding that a sentencing court may consider the length of time needed to complete restitution when setting the length of probation). In short, we conclude that ordering a lengthy term of supervision in order to enable Longmire to pay a sizeable restitution amount does not violate his right to equal protection.

¶ 42. Finally, Longmire cites three matters which he argues are "new factors" and thus grounds for the trial court to modify his term of extended supervision: (1) a reduction in the maximum term of extended supervision for the class of felony of which Longmire was convicted; (2) the rationale of the Criminal Penalties Study Committee Final Report on 1997 Wisconsin Act 283 for recommending reduced maximum terms of supervision; and (3) any reduction in restitution as a result of this appeal. We conclude the first two matters are not "new factors," and although the last one is a new factor that Longmire may cite in a renewed sentence modification motion on remand, it does not provide a basis for us to reverse the judgment and order currently on appeal.

¶ 43. A defendant seeking sentence modification based on a new factor must show that a new factor both exists and justifies modification. *State v. Champion*, 2002 WI App 267, ¶ 4, 258 Wis. 2d 781, 654 N.W.2d 242, *review denied,* 2003 WI 32, 260 Wis. 2d 752, 661 N.W.2d 100 (Wis. Mar. 13, 2003) (No. 01–1894–CR). A new factor is a fact or set of facts highly relevant to the sentence determination that was not known to the trial judge at the time of original sentencing because it was not then in existence or was "unknowingly overlooked" by all parties. *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). A new factor must also be a development that frustrates the purpose of the original sentence, and must be proved by clear and convincing evidence. *Champion*, 258 Wis. 2d 781, ¶ 4. Whether a fact or set of facts constitutes a new factor is a question of law that we review without deference to the trial court. *State v. Michels*, 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989).

¶ 44. At the time Longmire committed his offense in 2001, theft in an amount greater than $2,500 was a Class C felony, punishable by a maximum bifurcated sentence of fifteen years, with no specified maximum term of extended supervision within the fifteen-year total maximum sentence. WIS. STAT. §§ 943.20(3)(c), 939.50(3)(c), and 973.01(2). This classification and maximum sentence remained in effect during 2002 when Longmire was convicted and sentenced. Just prior to Longmire's sentencing, however, the legislature created new classifications to take effect on February 1, 2003. Longmire's crime became a Class G felony, now punishable by a maximum bifurcated sentence of ten years, of which no more than five years may be

ordered as a term of extended supervision. 2001 Wis. Act 109; Wis. Stat. §§ 943.20(3)(c), 939.50(3)(g), and 973.01(2)(d)4 (2003).[13]

¶ 45. Longmire contends that both the reduction in penalty and the rationale behind it constitute new factors for the purposes of sentence modification. However, it has long been the law in Wisconsin that a reduction in the maximum penalty for a crime subsequent to a defendant's sentencing is not a new factor. *State v. Hegwood*, 113 Wis. 2d 544, 548, 335 N.W.2d 399 (1983). More recently, we have concluded that a change in the classification of a crime under the 2003 revisions to the Truth in Sentencing laws is also not a new factor for traditional sentence modification purposes. *State v. Torres*, 2003 WI App 199, ¶ 7, 267 Wis. 2d 213, 670 N.W.2d 400, *review denied,* 2004 WI 1, __Wis. 2d __, 673 N.W.2d 693 (Wis. Nov. 17, 2003) (Nos. 03–0233–CR, 03–0234–CR, 03–0235–CR, 03–0236–CR).[14]

---

[13] The notation (2003) refers to provisions in the 2001–02 statutes that became effective on February 1, 2003.

[14] Our conclusion in *State v. Torres*, 2003 WI App 199, ¶ 7, 267 Wis. 2d 213, 670 N.W.2d 400, *review denied,* 2004 WI 1,__Wis. 2d__, 673 N.W.2d 693 (Wis. Nov. 17, 2003) (Nos. 03–0233–CR, 03–0234–CR, 03–0235–CR, 03–0236–CR) rests in part on our observation that the newly created Wis. Stat. § 973.195

> reflects the legislature's intent to create a separate and specific statutory procedure for requesting a sentence reduction that should be used in place of [a motion for sentence modification] whenever "a change in law or procedure related to sentencing . . . effective after the inmate was sentenced that would have resulted in a shorter term of a confinement" is the basis of the modification.

*Id.*, ¶ 9. We note that § 973.195(b)1 also permits a defendant to request sentence adjustment grounded, among other things, on

¶ 46. We conclude that, just as a change in the classification and maximum sentence of a crime is not a new factor for traditional sentence modification purposes, neither is the rationale underlying the change. The study committee's rationale for recommending to the legislature that certain maximum terms of extended supervision be reduced is not a "fact or set of facts" relevant to the imposition of Longmire's sentence. Rather, it is an opinion on an aspect of correctional policy held by a committee created to conduct a study and make recommendations regarding the implementation of the Truth in Sentencing laws in Wisconsin. *See* Criminal Penalties Study Comm. Final Report on 1997 Wisconsin Act 283, Truth In Sentencing, at 1 (Aug. 31, 1999). In any event, even if the committee's views could be deemed a "new factor," the trial court did not share those views, making it highly unlikely that the court would have imposed a shorter term of supervision had it been aware of the committee's recommendations at sentencing.[15]

---

his or her "progress in rehabilitation." The trial court stated at the postconviction hearing (see ¶ 40) that it would entertain a motion from Longmire to reduce his term of extended supervision if he fully paid the ordered restitution in less than ten years. We note that § 973.195 limits when a request for sentence adjustment may be filed, and it limits the types of adjustments a court can order. We express no opinion as to whether the circuit court possesses the authority, either under § 973.195 or other law, to terminate Longmire's term of supervision upon completion of his restitution obligation.

[15] In denying Longmire's sentence modification motion, the court explained:

So there were two primary reasons why he got the sentence he got, and I articulated both of them. One was to punish him, to

¶ 47. Finally, we acknowledge (and the State does not dispute) that the amount of restitution the court ordered Longmire to pay played a significant role in the court's determination of the length of extended supervision it ordered. We have directed that the restitution amount be reduced from $34,985 to $27,252. We conclude that this twenty-two percent reduction in restitution constitutes a new factor given the prominent role the restitution amount played in the court's sentencing decision. We therefore direct that on remand Longmire may renew his motion for a reduction in the term of his extended supervision on the basis of this new factor. Because the trial court may or may not conclude that the reduction in restitution we have ordered warrants a modification, and because this factor was not present when the court entered the appealed judgment and order, we will not vacate Longmire's present sentence or reverse the postconviction order denying sentence modification.

## CONCLUSION

¶ 48. For the reasons discussed above, we vacate that part of the appealed judgment and order requiring Longmire to pay $34,985 in restitution and direct that

finally get the message across to him that he can't be doing this. It's got to stop. There's not going to be a fourth victim. And the other one was to make sure that I could make the victims whole, because he did steal a lot of money, and it's going to take him a long time to pay it back, and five years isn't going to be enough.

*And it may well be that after a year or two the legislature is going to realize that programs limiting extended supervision to a five-year period of time when there's a tremendous amount of restitution due is a mistake, and they may change the law back.*

(Emphasis added.)

an amended judgment be entered on remand setting the amount of restitution at $27,252. We affirm the appealed judgment and order in all other respects but direct that Longmire may renew his motion to reduce the term of his extended supervision on the basis of the reduction in restitution we have ordered.

*By the Court.*Judgment and order affirmed in part; reversed in part and cause remanded with directions.