COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1176-CR**

Cir. Ct. No. **2019CF39**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARY ELIZABETH MELSTROM,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Pierce County: ELIZABETH L. ROHL, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

¶1 HRUZ, J.[1] Mary Melstrom appeals a judgment requiring her to pay $28,247.85 in restitution to Badger Mutual Insurance Company as well as the 10%

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

restitution surcharge required by WIS. STAT. § 973.06(1)(g). Melstrom argues that the two largest portions of the restitution award—specifically, $15,520.35 in investigatory fees Badger Mutual paid to uncover the cause of a house fire and Badger Mutual's $11,364.57 in attorney fees—were not recoverable under the restitution statute, WIS. STAT. § 973.20(5). She also argues that the 10% surcharge should not have been applied because she deposited the proposed restitution award with the clerk of courts before her hearing.

¶2      We affirm the judgment in part and reverse in part. The $15,520.35 ordered for investigatory fees is permissible under WIS. STAT. § 973.20(5)(a) and *State v. Holmgren*, 229 Wis. 2d 358, 599 N.W.2d 876 (Ct. App. 1999). The $11,364.57 attorney-fee portion of the award, on the other hand, is impermissible under *State v. Longmire*, 2004 WI App 90, 272 Wis. 2d 759, 681 N.W.2d 534. We therefore reverse that part of the award and remand with directions to subtract $11,364.57 from the total and return it to Melstrom. We further conclude that the 10% surcharge applies to all permissible portions of the restitution award because its imposition is automatic and mandatory. However, the surcharge must be reduced by $1,136.46, which constitutes 10% of the reversed portion of the restitution award.

## BACKGROUND

¶3      In February 2022, Melstrom pled guilty to misdemeanor negligent handling of burning material. At sentencing, the circuit court placed Melstrom on probation, the terms of which included an order for restitution, and a restitution hearing was set.

¶4      The total amount requested at Melstrom's restitution hearing was $28,247.85. Kevin Kennedy, an attorney representing Badger Mutual Insurance

2

Company, which insured Melstrom's house, testified that most of this requested sum stemmed from the insurer's hiring experts to investigate the cause of the fire and lawyers to determine whether there was insurance coverage.

¶5    The experts and related investigation cost $15,520.35. As Kennedy testified, this amount was spent hiring an adjuster, a fire inspector, and an electrical engineer to determine the cause of the fire, as well as hiring a court reporter to record Melstrom's sworn statement:

> Badger Mutual would have, first of all, ordered a title search on the property. Then they would have hired what's called an independent adjuster, who is a field adjuster, to inspect the property, and because it was a fire loss, they retained a fire investigator to investigate the origin and cause of the fire, and that required also retaining an electrical engineer to assist in the determining whether or not the electrical system of the home had anything to do with the fire. And then the last investigation category would be for a court reporter to take the sworn examination under oath of Ms. Melstrom.

¶6    The attorney fees were $11,364.57. As Kennedy explained, these attorney fees related primarily to determining coverage under the policy:

> [T]he attorney's fees incurred were for retention of our law firm, starting … two days after [the] fire, to assist in the investigation, to conduct an—a sworn examination under oath from Ms. Melstrom, to review claim file information and to ultimately provide a coverage opinion with respect to the claim that was being made under the policy, and then we also worked with the mortgage company to determine whether they had a claim or not under the policy.

¶7    There were also additional, smaller amounts claimed by Melstrom's ex-husband and a small amount Badger Mutual requested for storage fees for potential evidence in the event that Melstrom's case went to trial. Those amounts are not at issue.

¶8    Even though Melstrom contested the restitution award, she paid the amount requested before entering her plea.  The clerk of courts' office accepted and held Melstrom's check for approximately $28,000.

¶9    The court commissioner presiding over Melstrom's restitution hearing ordered $28,247.85 in restitution.    In ordering restitution, the commissioner determined that the expert and attorney fees were both reasonable because they were necessary to help determine what happened in relation to the fire and to ensure that the insurer was correctly covering expenses under the policy.   The commissioner opted not to add the 10% surcharge required by WIS. STAT. § 973.06(1)(g) because Melstrom had already posted the money at the clerk of courts' office and there were no collection issues.

¶10   Melstrom requested a de novo review of the commissioner's order. The circuit court vacated the original order and entered a new order granting the initial $28,247.85 in restitution but adding a 10% surcharge as required by WIS. STAT. § 973.06(1)(g).  Melstrom now appeals.

## DISCUSSION

¶11   "Whether the circuit court had authority to order restitution in the first instance under a particular set of facts is a question of law."  **Holmgren**, 229 Wis. 2d at 366.  We will not overturn findings of fact, however, "unless they are clearly erroneous."  *See id.*; *see also* WIS. STAT. § 805.17(2).

¶12   WISCONSIN STAT. § 973.20(5) allows courts to order restitution for certain damages incurred by the victim of a crime.  As relevant here, § 973.20(5)(a) allows a restitution award to include "special damages" that "could be recovered in a civil action against the defendant for his or her conduct in the

4

commission of a crime considered at sentencing." This allowance is limited in two ways. *Longmire*, 272 Wis. 2d 759, ¶13. "First, before a trial court may order restitution 'there must be a showing that the defendant's *criminal activity* was a substantial factor in causing' pecuniary injury to the victim." *Id.* (citation omitted). In other words, the defendant's criminal action must "set into motion events that resulted in the damage or injury." *Id.* (citation omitted). Second, restitution is limited only to "special" damages, or pecuniary expenditures paid out because of the crime. *See id.*, ¶14. It does not include "general" damages, such as pain and suffering. *Id.*

¶13 Turning to the $15,520.35 in investigatory fees, we conclude that this amount is recoverable under WIS. STAT. § 973.20(5)(a) and *Holmgren*, a case where we held that money spent by an employer to investigate the depth and breadth of a defendant's theft from his employer constituted "special damages." *See Holmgren*, 229 Wis. 2d at 371-72. In that case, Nils Holmgren was the general manager of the Shawano Municipal Utilities Commission. *Id.* at 362. He pled no contest to felony theft after admitting, among other things, that he improperly charged long-distance phone calls and cellphone calls to his employer in the course of conducting an extramarital affair. *Id.* at 362-63. Holmgren's employer hired an accounting firm to audit Holmgren's expenses, and the $17,425 audit bill was included in the circuit court's restitution award. *Id.* at 363-64.

¶14 Holmgren contested the audit on appeal, arguing that it was "excessive and that the auditors spent substantial time investigating matters not related to the crime charged in the complaint." *Id.* at 371. We affirmed the award, reasoning that because "the audit was done to ascertain the extent of Holmgren's wrongdoing and to attach specific amounts to the wrongdoing," it was a "special damage" under WIS. STAT. § 973.20(5)(a). *See Holmgren*, 229 Wis. 2d at 364-65,

372 (defining "special damages" under the restitution statute and applying the definition to the audit). In other words, "[t]he audit was needed to determine the extent of Holmgren's criminal activities and the restitution he owed." *Id.* at 372.

¶15 Under *Holmgren*, the $15,520.35 in expert and investigatory fees paid to uncover the extent of Melstrom's wrongdoing constitutes "special damages" under WIS. STAT. § 973.20(5)(a). As the commissioner explained, Badger Mutual's investigation was set in motion by Melstrom setting fire to items in her home. The investigation focused on confirming the role Melstrom played in the fire and discovering the extent to which other factors—such as electrical issues, for example—contributed to the fire. Therefore, this portion of Melstrom's restitution award should stand.

¶16 The attorney-fee portion of the restitution award, on the other hand, is prohibited by *Longmire*. In *Longmire*, homeowners hired Tony Longmire to complete a home improvement project that would total over $45,000. *Longmire*, 272 Wis. 2d 759, ¶4. They paid Longmire $30,000, after which Longmire subcontracted part of the work—excavation and pouring concrete—for about $5,000, but he did no other work on the project. *Id.* Longmire pled guilty to theft by contractor. *Id.*, ¶5. Part of the restitution award included $2,200 in attorney fees that the homeowners had incurred. *Id.*, ¶27. The homeowners had commenced a civil lawsuit against Longmire, seeking recovery of damages for landscaping costs and additional construction necessitated by the subcontractor's allegedly defective work, and they also asked their attorney to draft a new contract in lieu of the one originally agreed to, but which Longmire had not completed. *Id.* On appeal, we reversed the award of attorney fees, concluding they did not constitute special damages under WIS. STAT. § 973.20(5)(a). *Longmire*, 272 Wis. 2d 759, ¶¶27-33.

¶17     *Longmire*'s reasoning hinged on the plain language of WIS. STAT. § 973.20(5)(a), which authorizes restitution only for special damages that "could be recovered in a civil action against the defendant." *Longmire*, 272 Wis. 2d 759, ¶32 (emphasis omitted; citation omitted).  The American Rule generally precludes recovery of attorney fees in civil actions.  *See id.*, ¶29.  Therefore, attorney fees do not fall under § 973.20(5)(a).  Even in circumstances where attorney fees are recoverable—i.e., for statutory or other exceptions to the American Rule—those attorney fees are still distinct from what we consider "damages," and they still do not fall under the definition of "special damages" contemplated by the restitution statute.  *See Longmire*, 272 Wis. 2d 759, ¶¶29-31.

¶18     Furthermore, *Longmire* distinguished circumstances in which attorney fees arise from litigation directly involving the defendant from those in which the defendant's criminal conduct necessitates litigation with a third party:

> Our holding in *State v. Anderson*, 215 Wis. 2d 673, 573 N.W.2d 872 (Ct. App. 1997), … does not govern the present facts.  We upheld in *Anderson* the inclusion in a restitution order of attorney fees "where the incurred attorney fees are the natural and proximate result of a wrongful act by the defendant which subjects the plaintiff to litigation *with a party other than the defendant.*"  The fees at issue here were incurred in pursuing claims against Longmire, not a third party.  Moreover, we note that the attorney fee at issue in *Anderson* was a contingency fee that reduced the victims' recovery from a third party who shared responsibility for their losses.  If the amount recovered from the third party was allowed as an offset against the victims' pecuniary losses, the effect of allowing the fees as an item of restitution essentially reduced the offset to reflect the net value of the third-party recovery the victims actually received, just as we have reduced Longmire's offset to reflect the victims' net benefit from Longmire's construction expenditures.

*Longmire*, 272 Wis. 2d 759, ¶32 n.9 (emphasis added).

¶19    We find **Longmire**'s reasoning dispositive here. We agree that the plain language of WIS. STAT. § 973.20(5)(a) authorizes restitution only for special damages that "could be recovered in a civil action against the defendant" and that attorney fees are generally not recoverable. *See **Longmire***, 272 Wis. 2d 759, ¶¶27-33 (quoting § 973.20(5)(a)). The attorney fees at issue here also do not relate to litigation against a third party, as in **Anderson**. Rather, the attorney fees here related to Melstrom's conduct and were ultimately incurred to determine whether insurance coverage existed—something that insurance companies undertake with any claim.

¶20    Moreover, we are not persuaded by the State's contention that Badger Mutual's attorney fees are recoverable under WIS. STAT. § 973.20(5)(c). That statute provides that a restitution order may require the defendant to "[r]eimburse any person or agency for amounts paid as rewards for information leading to the apprehension or successful prosecution of the defendant for a crime for which the defendant was convicted or to the apprehension or prosecution of the defendant for a read-in crime."

¶21    The plain language of WIS. STAT. § 973.20(5)(c) does not allow for recovery of the attorney fees sought in this case. The money at issue here was spent to ascertain how the fire started and whether there were contributing factors beyond Melstrom's conduct; the State does not explain how or why that constitutes a "reward" for information leading to her prosecution. *See **id.*** Moreover, none of the cases the parties cite relate to § 973.20(5)(c); rather, they analyze whether certain fees are recoverable under § 973.20(5)(a). Therefore, we reject the notion that Badger Mutual's attorney fees are recoverable under § 973.20(5)(c).

¶22 Finally, Melstrom argues that the circuit court wrongly assessed the 10% surcharge because the surcharge is allowed, but not required, by WIS. STAT. § 973.06(1)(g), and because it is unreasonable to award the surcharge for an amount that was prepaid.

¶23 The plain language of WIS. STAT. § 973.06(1)(g) makes clear, however, that imposition of the surcharge is automatic and mandatory. That section provides that

> [e]xcept as provided in [WIS. STAT. §] 93.20, the costs, fees, and surcharges taxable against the defendant *shall* consist of the following items and no others:
>
> ….
>
> (g) An amount equal to 10[%] of any restitution ordered under [WIS. STAT. §] 973.20, payable to the county treasurer for use by the county.

Sec. 973.06(1)(g) (emphasis added).

¶24 For the foregoing reasons: (1) the $15,520.35 in investigatory fees is affirmed; (2) the attorney-fee portion of the award is reversed, and the cause is remanded with directions to subtract $11,364.57 from the total amount ordered for restitution and return it to Melstrom; and (3) the 10% surcharge applies to all permissible portions of the restitution award but must be lowered by $1,136.46, which constitutes 10% of the reversed portion of the restitution award.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.